UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WANDA COLLIER,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>TURNER INDUSTRIES GROUP, LLC, a Louisiana limited liability company; DAVID EASTRIDGE, an individual; NU-WEST INDUSTRIES, INC., a Delaware corporation, d/b/a Agrium Conda Phosphate Industries, and JACK DANIELL, an individual,<br><br>　　　　　　　Defendants. | Case No. 4:09-cv-596-MHW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it a motion in limine filed by defendant Turner Industries Group, LLC ("Turner"). (Dkt. 74). The motion is fully briefed and at issue. For the reasons expressed below, the Court will grant the motion in part and deny the motion in part.

## ANALYSIS

The factual background of this case was set forth in detail in the Court's June 22, 2011 Order (Dkt. 40) and will not be repeated here. Turner seeks to exclude: 1) any mention of any alleged harassing behavior by Jack Daniell other than the single "belly

**MEMORANDUM DECISION AND ORDER 1**

bumping" incident; 2) any mention of an alleged consensual sexual relationship between Doug Taylor and Kathie Ledger; 3) any evidence of opinion testimony from Mr. Harrell that he thought Collier did her job well; and 4) any mention of an alleged statement by Eastridge to John Tippetts regarding removing Collier from the work site before December 1, 2008.  Turner contends all of this evidence is inadmissible pursuant to Federal Rules of Evidence 401 and 403.  Rule 401 defines relevant evidence and Rule 403 allows for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, among other reasons.

*Harassing Behavior*

Turner specifically seeks to exclude mention of: (1) Daniell's request that Collier engage in additional training; (2) Daniell's demand that employees wear face shields; (3) Daniell's displeasure over housekeeping, generally; and (4) a "tool crib" incident in which Doug Taylor yelled profanities at Collier.

In evaluating whether these incidents were admissible to support Collier's hostile workplace claims, the Court's June 22 Order held that these incidents "do not, as a matter of law, constitute a hostile workplace." (Dkt. 40: *June 22 Order* at 22).  The Court reasoned that none of these incidents could be attributed to Collier's gender and that, therefore, Collier may not use them to support her hostile workplace claims based on her gender against Turner.  However, the Court did not evaluate whether they are admissible to support her retaliation claim.

**MEMORANDUM DECISION AND ORDER 2**

In support of her retaliation claim, Collier must show that she suffered an adverse employment action because she opposed a practice of her employer made unlawful by Title VII, such as discrimination against an employee based on her gender.  *See* 42 U.S.C. § 2000(e)-3(a).  In order to be a protected activity, Collier's opposition must have been directed toward a discriminatory act, such as gender discrimination, by an employer or an agent of an employer.  *See EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1013-1014 (9th Cir. 1983).  Here, the record establishes that Collier complained of Daniell's gender discrimination at the August 4, 2008 meeting with Eastridge.  That complaint is her protected activity and it was directed at her employer, as required.  She made the complaint upon allegedly learning that Daniell had an issue with her gender and that he was "old school."  In an October 28, 2011 Order, the Court held that both of these sentiments were admissible at trial.  (Dkt. 112).

When deciding whether to admit evidence regarding the four "harassing" incidents, the Court must first determine whether they are relevant to Collier's retaliation claim, and then weigh their probative value against their danger of unfair prejudice to Turner.  Leaning against a finding of relevance, all four of these incidents occurred before the August 4 meeting during which Collier was prompted to make her complaint.  Also leaning against a finding of relevance is Judge Winmill's earlier determination that, as a matter of law, these incidents were not related to Collier's gender.  Moreover, even if they are relevant to Collier's claim, the Court finds that they could confuse the jury so as to

**MEMORANDUM DECISION AND ORDER 3**

cause unfair prejudice in a way that a limiting instruction would not be able to cure.  For each of these reasons, the Court grants Turner's motion to the extent it seeks to exclude any mention of 1) Daniell's request that Collier engage in additional training; (2) Daniell's demand that employees wear face shields; (3) Daniell's displeasure over housekeeping, generally; and (4) the "tool crib" incident in which Doug Taylor yelled profanities at Collier.

*Relationship between Taylor and Ledger*

Ledger is the Turner employee with responsibility for the tool crib; Taylor is another Turner employee.  Their relationship is only relevant should the Court allow testimony regarding the "tool crib" incident, which the Court has disallowed.

Collier has opined that Taylor was mean to her because he and Ledger were involved in a consensual sexual relationship, and Taylor was angered when Collier reprimanded Ledger for not timely opening the tool crib at the plant.  The Court's June 22 Order held that the tool crib incident was not related to Collier's gender and therefore could not be used to support Collier's hostile workplace claim.  Turner also argues that Collier lacks the sufficient personal knowledge required by Rule 602 to opine as to the existence of this relationship.

Collier argues that the conduct of Turner's employees toward Collier is relevant to Turner's state of mind in terminating her.  Specifically, "[t]he fact that Eastridge knew about this incident is relevant to the question of whether he acted on this knowledge when

**MEMORANDUM DECISION AND ORDER 4**

he decided to terminate Collier." (Dkt. 108: *Collier's Response* at 3).

Even if Eastridge considered the tool crib incident when he decided to include Collier in the RIF, because the Court has already determined that this incident was not related to Collier's gender, Eastridge could have properly considered all aspects of Collier's job performance when including Collier in the RIF, so long as they were not gender based. Additionally, because in other motions the Court has effectively excluded any mention of the tool crib incident, the Court cannot conceive of a circumstance upon which any mention of this alleged sexual consensual relationship would be relevant. For each of these reasons, the Court grants Turner's motion to exclude any mention of Taylor and Ledger's alleged consensual sexual relationship.

### Mr. Harrell's Testimony

Mr. Harrell is a Corporate Health & Safety Manager who opined that Collier did a good job at Agrium. Turner seeks to exclude any mention of Mr. Harrell's opinion because it is irrelevant to these proceedings. Turner argues that Collier was terminated in an RIF which was unrelated to her job performance. Turner concedes that it did list Mr. Harrell's deposition testimony on its exhibit list, but offers that it "listed this testimony out of an abundance of caution if Plaintiff is permitted to allege, at trial, that being asked to be in the field and perform audits created some sort of adverse employment action." (Dkt. 111: *Turner's Reply* at 6). Mr. Harrell's testimony speaks to the fact that these duties were part of her job.

**MEMORANDUM DECISION AND ORDER 5**

In response, Collier contends that Eastridge has consistently stated that his reference to Daniell being "old school" was a reference to the fact that Collier should have a presence out and in the plant.  Collier understands Turner to argue that, as of the August 4, 2008 meeting, Turner thought there was an issue of Collier not being out and in the plant doing her job.  If this is Turner's position, then Collier argues she should be allowed to defend against it, and that Mr. Harrell's testimony would allow her to challenge Turner's assertion that she did not have an adequate presence in the plant when Mr. Harrell thought she was doing a good job at Agrium.  Moreover, Collier points out that Turner listed Mr. Harrell's testimony on its exhibit list, implying that it will attempt to use this testimony in some way for which Collier is entitled to be prepared.

The Court finds that Mr. Harrell's opinion would only become relevant if Turner seeks to introduce evidence that when Eastridge told Collier that Daniell was "old school," it meant that Daniell thought Collier should be spending more time on the floor. If Turner offers testimony that it is "old school" to expect a safety supervisor to have a presence out and in the plant, then Collier should be able to use the opinion of Mr. Harrell to show that she did, in fact, go out in the plant, and that she was doing a good job, at least as far as Mr. Harrell was concerned.  The Court finds the probative value of such evidence under these circumstances substantially outweighs any danger of unfair prejudice.

If Turner seeks to introduce evidence that Daniell's being "old school" was not

**MEMORANDUM DECISION AND ORDER** 6

gender based and, instead, related only to an expectation that Collier spend more time on the plant floor, then Collier is free to introduce the fact that Mr. Harrell opined that she did her job well.

### *Eastridge's statement to Tippetts*

John Tippetts was Agrium's Human Resources Officer. Several days after Eastridge informed Collier that she would be included in the RIF, he allegedly told Tippetts that he was considering terminating Collier ahead of the RIF enforcement date of December 1, 2008. Turner seeks to exclude any mention of this conversation as irrelevant and unfairly prejudicial, as it is undisputed that Collier was not terminated early.

Collier argues that this conversation shows that Eastridge was upset because Collier filed a gender based discrimination claim, and that he was willing to contemplate retaliation against her. "This is evidence supporting [Collier's] theory that Eastridge acted with discriminatory motivation and that the RIF was nothing more than pretext." (Dkt. 108: *Collier's Response* at 4). Collier contends that evidence corroborating an employer's state of mind regarding termination may well surface in the statements he makes in the days after deciding to terminate the employee.

The Court finds that Eastridge's statement is relevant, as it supports Collier's theory that she was included in the RIF as a pretext. Moreover, in this instance, its probative value is not substantially outweighed by the danger of unfair prejudice,

**MEMORANDUM DECISION AND ORDER 7**

confusion of the issues, or misleading the jury.  If Collier introduces this statement, Turner is free to argue that, despite making this statement, Eastridge did not act on it.

## ORDER

In accordance with the Memorandum Decision set forth above,

IT IS HEREBY ORDERED, that the motion in limine (Dkt. 74) is GRANTED in part and DENIED in part.  It is granted to the extent it seeks to exclude 1) any mention of Daniell's request that Collier engage in additional training, that employees wear face shields, his displeasure with general housekeeping, or the "tool crib" incident; and 2) any mention of an alleged consensual sexual relationship between Doug Taylor and Kathie Ledger.  It is denied to the extent it seeks to exclude 1) Mr. Harrell's testimony explaining how a safety supervisor is expected to do her job, and 2) any mention of an alleged statement by Eastridge to John Tippetts regarding removing Collier from the work site before December 2008.



DATED: November 23, 2011

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER 8**